IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL W. PAULSON,** | : | |
|     **Plaintiff,** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 20-CV-3678** |
| | : | |
| **TERRY BURKE,** *et al.*, | : | |
|     **Defendants.** | : | |

## MEMORANDUM

**YOUNGE, J.**                                                                                     **SEPTEMBER 8, 2020**

      Plaintiff Michael W. Paulson, a convicted and sentenced state prisoner incarcerated at the George W. Hill Correctional Facility in Delaware County, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, against the following four employees of GEO Group, Inc.: (1) Terry Burke; (2) Francis Applah; (3) Don Bees; and (4) R. Stancill.  Paulson seeks to proceed *in forma pauperis*.  For the following reasons, the Court will grant Paulson leave to proceed *in forma pauperis* and permit Paulson to proceed on his excessive force claim against Francis Applah.  All other claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I.**     **FACTUAL ALLEGATIONS**

      Paulson alleges that on July 1, 2019, while working in the kitchen, a kitchen supervisor, Francis Applah, entered the kitchen and began verbally harassing and threatening him, telling him to "get the fuck out" and stating that he would "fuck [Paulson] up."  (Compl. ECF No. 2 at 9, 39, 43.)[1]  Paulson surmises that Applah told him to get out because a different kitchen

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

supervisor, Emmanuel Drapler ("Y.G."), tried to fire Paulson on June 27, 2019 "for going to a visit as directed by a correctional officer." (*Id.*)

On April 1, 2020, while Paulson was working in the officer dining room, Applah fired him "for no claimed reason whatsoever." (*Id.* at 9, 23.) When Paulson questioned why he was being fired, Applah became disrespectful and pointed his fingers in Paulson's face. (*Id.*) When Paulson left the dining room, Applah allegedly followed him and then Applah began yelling and cursing at Paulson. (*Id.*) When Paulson attempted to leave, Applah "put his hands on [Paulson] by grabbing [Paulson's] shirt, attempting to rip off [Paulson's] shirt and/or apron. (*Id.*) Following this incident, Paulson reported Applah's misconduct to Lt. Moody. (*Id.*)

On May 14, 2020, Paulson was collecting trash for his assigned kitchen sanitation job in the officer dining room when Applah entered the room and began yelling and cursing at Paulson. (*Id.* at 9-10, 23.) Applah "yanked the trashbag out of [his] hand and yanked [his] other wrist off the bag." (*Id.* at 10, 23.) Applah then grabbed Paulson's arms and hands before punching him in the face, causing Paulson's glasses to fall off of his face. (*Id.*) Applah also "kneed" Paulson in the abdomen. (*Id.*) Correctional officers, including R. Stancill, arrived, and Paulson was escorted back to his housing unit and given an inmate interview sheet. (*Id.*) Paulson asserts that this was the second time Applah had assaulted him, and the third time Applah had verbally abused and threatened him. (*Id.* at 10.)

On May 15, 2020, after submitting an inmate interview sheet, Paulson was served with a "write up" by Stancill, charging him with five violations. (*Id.*) Stancill also told Paulson that he was officially fired and collected Paulson's shirt and badge. (*Id.* at 11, 14.) Paulson contends that he was disciplined without having "a hearing and disciplinary sanction." (*Id.*) Later that day, while he was in the unit manager's office, Applah entered the office and started cursing at

Paulson.  (*Id.* at 11.)  Applah called him a "pussy" and told him that he was "going to fuck [Paulson] up."  (*Id.*)  Paulson filed another inmate interview sheet.  (*Id.*)  Paulson avers that Applah verbally assaulted him again on May 27, 2020.  (*Id.* at 10-11, 19.)

On May 27, 2020, Paulson was assigned a commissary position "because [he] beat the disciplinary action brought against [him] by due process; [he] did not receive a hearing within seven (7) business days."  (*Id.* at 14.)  While he was eating lunch, Lt. Terry Burke took his ID badge and "told [him] that [he] could no longer have a job within this facility."  (*Id.* at 14.)  Burke also told Paulson that he had searched his cell.  (*Id.*)  Paulson avers that papers were confiscated from his cell, including his copy of the disciplinary report and a collection of letters that he wrote for his son and his child's mother.  (*Id.* at 11, 14, 18.)  Paulson asserts that this search and seizure was unreasonable and served no legitimate penological interest.  (*Id.* at 11, 15.)  Paulson sent a letter to Lee Tatum, deputy facilitator, briefing him on the above claims and requesting a meeting in order to resolve those claims.  (*Id.* at 11, 14-15.)  Paulson told Tatum that "[his] rights were violated and [his] privilege of having a job [was] unconstitutionally revoked" in violation of the disciplinary action guidelines.  (*Id.* at 14-15.)

Paulson asserts that Applah has created an unpleasant and hostile environment, and he has suffered psychological damage as a result of the verbal and physical abuse.  (*Id.* at 11.)  Paulson requested to see "psyc," and he was seen on June 11, 2020.  (*Id.*)  Paulson submitted another medical request slip on June 18, 2020.  (*Id.* at 11, 16.)

On June 25, 2020, Paulson met with investigator Don Bees in "video court" to discuss the claims made in his letter to Tatum and his prior grievances.  (*Id.* at 11.)  Bees informed Paulson that he would "look into these claims and see if [Paulson] would be able to have some type of employment."  (*Id.*)

Paulson avers that the verbal harassment and assault by Applah has caused him "to be in a state of mental distress" and he suffers from "anxiety, depression, and PTSD." (*Id.* at 3.) Paulson also avers that he has not received any medical treatment despite his filing of a medical request slip on June 18, 2020 wherein he requested an appointment with "psyc" as a result of "being verbally harassed and assaulted by Francis Applah."[2] (*Id.*) Based on the foregoing allegations, Paulson is seeking the following relief: (1) termination of Applah's employment; (2) lost wages in the amount of $1,974.00; and (3) punitive damages in the amount of $19,740. (*Id.* at 5-6.)

## II.     STANDARD OF REVIEW

The Court will grant Paulson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. §

---

[2] Despite this assertion, Paulson admits that he was treated on at least one occasion for his alleged psychological issues. (ECF No. 2 at 11.) The Court does not understand Paulson to be raising claims against the Defendants based upon medical needs. In any event, to state a claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Paulson has not alleged a plausible basis for concluding that any Defendants exhibited deliberate indifference here.

[3] However, as Paulson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b)

1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   Conclusory allegations do not suffice.  *Id.*  As Paulson is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

### III. DISCUSSION

#### A. Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (the personal involvement of each defendant in the alleged constitutional violation is a required element and a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

##### 1. Claims Against Francis Applah

Paulson appears to be bringing two claims against Applah. One claim is based on Applah's alleged verbal and physical abuse of Paulson. The second claim concerns Paulson's termination from his kitchen work assignment.

### a. Claims Based on Physical and Verbal Abuse

With respect to his physical abuse claims, Paulson avers that on one occasion, Applah "put his hands on [him] by grabbing [his] shirt, attempting to rip off [his] shirt and/or apron." (ECF No. 2 at 9.) On a second occasion, occurring on May 14, 2020, Applah "yanked the trashbag out of [Paulson's] hand and yanked [his] other wrist off the bag." (*Id.* at 10, 23.) Applah then allegedly grabbed Paulson's arms and hands before punching him in the face, causing Paulson's glasses to fall off of his face. (*Id.*) Applah also "kneed" Paulson in the abdomen. (*Id.*)

Taking these allegations as true, Paulson may proceed on an excessive force claim against Applah. The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992). When screening an Eighth Amendment excessive force claim under § 1915, the Court asks whether the prisoner has alleged plausibly that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, Civ. A. No. 20-0687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7). The factors used to determine whether the force applied was excessive include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper

the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  Although the extent of an inmate's injuries is relevant to an Eighth Amendment analysis, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force." *Id.* at 104.  Thus, the inquiry must be driven by the extent of the force and the circumstances in which it is applied, not by the resulting injuries. *Id*. at 108; *see also Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).  The Eighth Amendment does not protect against a de minimis use of physical force, so long as it is not of a sort "repugnant to the conscience of mankind." *Brooks*, 204 F.3d at 107 (quoting *Hudson*, 503 U.S. at 9-10).  Construing Paulson's allegations liberally and accepting them as true, Paulson will be permitted to proceed on his claim of excessive force against Applah at this early stage of the litigation.

With respect to his verbal abuse claims, Paulson avers that Applah has called him names and verbally threatened him on several occasions, telling Paulson that he would "fuck [him] up." (ECF No. 2 at 9-11, 19, 23, 39, 43.)  To the extent Paulson intended to bring a separate claim based on Applah having spoken to him in an allegedly threatening or disrespectful manner, that claim fails because verbal harassment, although distasteful, does not amount to a constitutional violation.  *See Ledcke v. Pennsylvania Dep't of Corr.*, 655 F. App'x 886, 888-89 (3d Cir. 2016) (per curiam) (detainee's "claims of verbal harassment fail[ed] as a matter of law"); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Higgs v. Suey*, Civ. A. No. 07-5158, 2008 WL 699594, at *5 (D.N.J. Mar. 12,

2008) ("Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983.").

### b. Claims Based on Loss of Kitchen Work Assignment

Paulson avers that Applah fired him from his kitchen work assignment "for no claimed reason whatsoever." (ECF No. 2 at 9, 23.) Paulson, however, cannot state a constitutional claim based on the loss of his work assignment because inmates do not have a constitutional right to employment during incarceration. *See Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (per curiam) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection." (citing *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989))); *Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (per curiam) ("[P]risoners enjoy no protected interest in prison employment."). Accordingly, this constitutional claim fails.

Moreover, to the extent that Paulson avers that he was impermissibly fired prior to being afforded a hearing in accordance with prison policy (ECF No. 2 at 11, 14), this claim is not plausible. A prison official's failure to abide by prison policy does not constitute an independent basis for a constitutional claim. *See Watson v. Rozum*, Civ. A. No. 12-35, 2012 WL 5989202, at *8 (W.D. Pa. Oct. 29, 2012) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension."), *report and recommendation adopted*, Civ. A. No. 12-35, 2012 WL 5989245 (W.D. Pa. Nov. 29, 2012); *see also Laufgas v. Speziale*, Civ. A. No. 04-1697, 2006 WL 2528009, at *9 (D.N.J. Aug. 31, 2006) ("[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.").

### 2. Claims Against R. Stancill

Paulson avers that he was served with a "write up" by Stancill, charging him with five violations on May 14, 2020,[4] and it was Stancill who told him that he was officially fired from his kitchen work assignment. (ECF No. 2 at 10, 14.) Paulson avers that he "was di[s]ciplined without even having a hearing and di[s]ciplinary sanction." (*Id.* at 10.) To the extent that Paulson assigns blame to Stancill for not affording him a hearing in accordance with prison policy, as noted in the preceding section, this claim does not amount to a constitutional violation. *See Laufgas*, 2006 WL 2528009, at *9 ("[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983."). Paulson's claims against Stancill will be dismissed with prejudice.

### 3. Claims Against Terry Burke

Paulson appears to be bringing two claims against Burke. One claim is based on the search of his cell and the confiscation of papers. The second claim concerns Paulson's termination from his commissary work assignment.

---

[4] Paulson does not address the accusations which make up the violations allegedly charged by Stancill on May 14, 2020. The Court notes, however, that lodging a false accusation is not a sufficient basis for a due process claim. *See London v. Evans*, Civ. A. No. 19-559, 2019 WL 2648011, at *3 (D. Del. June 27, 2019) ("The filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges."); *King v. Quigley*, Civ. A. No. 18-5312, 2019 WL 342710, at *2 (E.D. Pa. Jan. 25, 2019) (dismissing detainee's due process claims upon screening, where claims were based "solely on the basis that he believe[d] the misconducts issued against him were false" and detainee did not allege he was not provided applicable protections). Moreover, it appears from the attachments to the Complaint that Paulson was granted an opportunity to rebut the violations rendered by Stancill because Paulson notes in his letter to Lee Tatum that he "beat the di[s]ciplinary action brought against [him] by due process" and was subsequently assigned a commissary work assigment. (ECF No. 2 at 14.)

### a.     Claims Based on Search of Cell and Confiscation of Papers

Paulson avers that the search of his cell by Burke was unreasonable and served no legitimate penological interest.  (ECF No. 2 at 11, 14-15.)  Paulson further avers that papers were improperly confiscated from his cell, including his copy of the disciplinary report and a collection of letters that he wrote for his son and his child's mother.  (*Id.* at 11, 14, 18.)

To the extent Paulson intended to raise Fourth Amendment claims against Burke based on his search of Paulson's cell or seizure of his property, those claims fail because "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells."  *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."); *Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (the Fourth Amendment right to be free from unreasonable searches and seizures does not apply to an inmate's prison cell or personal property, including legal papers); *Molina v. Wenerowicz*, Civ. A. No. 12-5824, 2016 WL 6876319, at *4 (E.D. Pa. Nov. 22, 2016); *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989) (explaining that the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property").  The foregoing Fourth Amendment analysis is established by the underlying penological purpose of maintaining safe and secure prisons and jails.  In that context, cell searches are deemed reasonable, "valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries."  *Hudson*, 468 U.S. at 529.

Additionally, Paulson cannot state a constitutional claim based on the loss of his property.  *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) ("'[A]n unauthorized

10

intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" (quoting *Hudson*, 468 U.S. at 533)); *Shakur v. Coelho*, 421 F. App'x 132, 135 (3d Cir. 2011) (per curiam) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property). *See also Booth v. King*, 346 F. Supp. 2d 751, 759-760 (E.D. Pa. 2004) (citing *Hudson*, 468 U.S. at 531) (finding no violation of the Fourteenth Amendment for deprivation of property without due process if there exist adequate post-deprivation remedies, which includes a grievance procedure).

Paulson has not stated a plausible claim based on the search of his cell. His unsupported allegation that no penological interest was served by the search is too conclusory to state a basis for liability. Moreover, given that Paulson had access to grievance proceedings and there exist state tort and common law remedies available to him, any claim under the Fourteenth Amendment for deprivation of property without due process also fails. *See Shakur*, 421 F. App'x at 135; *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010) (per curiam) ("[D]eprivation of inmate property by prison officials does not state a cognizable due process claim if the prisoner has an adequate post-deprivation state remedy.")

      **b.**  **Claims Based on Loss of Commissary Work Assignment**

Paulson avers that Burke took his ID badge and "told [him] that [he] could no longer have a job within this facility," thereby firing him from his commissary work assignment. (ECF No. 2 at 11, 14.) As noted above, Paulson cannot state a constitutional claim based on the loss of his commissary work assignment because inmates do not have a constitutional right to employment during incarceration. *Watson*, 567 F. App'x at 78. This constitutional claim fails.

11

### 4. Claims Against Don Bees

Paulson avers that on June 25, 2020, he "met with investigator Don Bees in video court to discuss the claims" he included in his letter to Lee Tatum. (ECF No. 2 at 11.) Bees allegedly told Paulson that he "would look into these claims" and check to see whether Paulson would be able to have some type of employment. (*Id.*) On June 26, 2020, Paulson sent a request for information to Bees, thanking Bees for meeting with him to discuss his grievances. (*Id.* at 11, 12.) There is no response noted on the request form. (*Id.* at 12.)

To the extent that Paulson asserts that Bees somehow violated his rights based on an alleged failure to respond adequately to his grievance, any claims based on the handling of grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Furthermore, "[m]erely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege [a] . . . deliberate indifference claim." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (per curiam); *Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (per curiam) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Folk v. Prime Care Med.*, 741 F. App'x 47, 51 (3d Cir. 2018) (per curiam) ("Although some of these defendants were apparently involved in responding to some of Folk's prison grievances, there are no allegations linking them to the underlying incidents and thus no basis for liability based on those later grievance reviews."). In sum, Paulson has not stated a plausible basis for a claim against Bees.

## IV. CONCLUSION

For the foregoing reasons, Paulson's excessive force claim against Francis Applah will be served.  All other claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).  Because any attempt at amendment to state claims based on verbal threats, cell searches, loss of property, loss of inmate work assignments, or grievances would be futile, the dismissal of claims against all other Defendants will be with prejudice.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002).  An appropriate Order follows.

BY THE COURT:

*/s/ John Milton Younge*
_____
**JOHN M. YOUNGE, J.**
